UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

LINDA WINSTON and CHARLIE WINSTON,

                Plaintiffs,

-against-

MARRIOTT INTERNATIONAL, INC. and MARRIOTT HOTELS, INC.,

                Defendants.

------------------------------------------------------------- X

03-CV-6321 (ARR)(JO)

NOT FOR
ELECTRONIC OR PRINT
PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiffs Linda and Charlie Winston allege that the negligence of defendants Marriott International, Inc. and Marriott Hotels, Inc. ("Marriott") caused Mrs. Winston to fall and suffer injuries.[1] During a work Christmas party on December 2, 2000, Mrs. Winston allegedly fell and suffered personal injuries while dancing on a dance floor at the Brooklyn Marriott Hotel. Compl., ¶32. Plaintiffs claim that Mrs. Winston's fall and consequent injuries were caused by defendants' "negligence, carelessness, and recklessness" in the "ownership, operation, care, custody, management, supervision, maintenance, staffing, and/or control" of the hotel premises. Id. at ¶33. Defendants have moved for summary judgment on all claims. For the reasons set forth below, the motion is granted.

## BACKGROUND

On December 2, 2000, plaintiffs Mr. and Mrs. Winston attended a Christmas party sponsored by Mrs. Wilson's employer, Chase Manhattan Bank, at the Brooklyn Marriott Hotel.

---

[1] Sodexho, Inc. was originally named as a defendant in this case. By stipulation of the parties, plaintiff's claims against Sodexho were dismissed with prejudice in December 2003. See Docket #4.

1

See Deposition of Linda Winston, submitted as Ex. 5 to Def.'s Mot. for Summ. J., 6-7 (hereinafter "Linda Winston Depo."). The party was held in a "huge" room which was "very well lit." Id. at 15, 16, 21. At the party, plaintiffs spent two or three hours socializing and eating dinner, then went to the dance floor at the front of the room to dance. Id. at 18-19, 22-24.

Soon after plaintiffs began to dance, Mrs. Winston fell forwards, and landed on the dance floor on the right side of her body. In their Complaint, plaintiffs imply, in part, that Mrs. Winston's fall resulted from an excessively slippery floor:

> Linda Winston. . . suffered personal injuries in an accident on a dance floor inside the premises of the hotel. . .
>
> [T]he aforesaid occurrence and the Plaintiff's consequent injuries were and are caused by the negligence, carelessness and recklessness of the Defendants. . . in failing timely and properly to exercise due diligence in the construction and maintenance of the dance floor on the premises, in improperly ordering the application of or in applying wax to same, in improperly ordering the application of or in applying excessive wax to same, in failing timely and properly to observe or inspect the condition of the floor prior to and following waxing, in failing timely and properly to take note of the slippery, dangerous and defective condition of the same following the waxing thereof, in failing timely and properly to order the cure of or to cure said slippery, dangerous and defective condition, in failing to order or take necessary, timely and proper steps to protect patrons legally using the dance floor on premises. . . although Defendants knew or in the exercise of reasonable care should have known of the aforesaid dangerous and defective condition(s) of the dance floor. . .

Compl., ¶¶32-33. When she was deposed on August 22, 2005, Mrs. Winston provided the following information about her injury:

| (p.28, line 15) | Q: | When you first got on the floor |
| 16) | | to dance, what – what, if anything, did you |
| 17) | | notice about the floor? |
| 18) | A: | Shiny. Shiny. Shiny. |
| 19) | Q: | Okay. Can you tell me how your accident |
| 20) | | occurred? Did you slip or did you – did you fall |
| 21) | | backwards? That's what I'm asking you, how did |
| 22) | | your accident occur? |
| 23) | A: | I went flying. Slippery. |

2

|     |     |     |
| --- | --- | --- |
| 24) | Q:  | You slipped? |
| 25) | A:  | No. The floor was slippery. |

Linda Winston Depo., 28.

Mrs. Winston also testified that she was unable to recall whether she had noticed anything about the floor other than that it was shiny (Id. at 33, lines 2-5); whether she saw any liquid, debris, or substances on the floor (Id. at 29, lines 6-9, Id. at 33, lines 6-8); whether her clothes were wet after she fell (Id. at 32, lines 18-21); and whether there was anything (e.g. floor wax) on her shoes (Id. at 32, lines 22-25). Mrs. Winston testified that she did not report this incident to any Marriott employee or complete an accident report. Id. at 37, line 20 to 38, line 2. Mrs. Winston did not recall whether she had seen or heard about anyone else falling or slipping on the dance floor (Id. at 38, lines 3-6). She testified that she herself had not complained to the Marriott about the dance floor prior to her fall, and she was not aware of any other complaints having been made to the Marriott about the dance floor before her incident. Id. at 38, lines 7-14.

At his deposition, also on August 22, 2205, Mr. Winston testified that, while he and his wife were dancing, "she slipped and fell." See Deposition of Charlie Winston, submitted as Ex. 6 to Def.'s Mot. for Summ. J. (hereinafter "Charlie Winston Depo."), 5, line 11. Mr. Winston provided the following information about his wife's accident:

|     |     |     |     |
| --- | --- | --- | --- |
| (p.5, line | 13) | Q:  | Okay. Do you know what caused [Mrs. Winston] to |
|     | 14) |     | fall? |
|     | 15) | A:  | The floor. |
|     | 16) | Q:  | What about the floor? |
|     | 17) | A:  | Slippery. |
|     |     | ... |     |
| (p.6, line | 12) | Q:  | Okay. While you were at the Marriott |
|     | 13) |     | that evening, had you seen anyone else slip or |
|     | 14) |     | fall on the floor? |
|     | 15) | A:  | No. I seen them slip. They was – they |
|     | 16) |     | was slipping on the floor. You know, some people |
|     | 17) |     | slip, but I didn't see nobody fall. |

3

```
18)  Q:   Okay. How many people did you see slip?
19)  A:   One or two because they had pulled off
20)        their shoes and put their stockings on.
```

Id. at 5-6. Mr. Winston further testified that he did not recall whether he saw anyone cleaning, mopping, or waxing the floor prior to his wife's accident (Id. at 7, lines 22-25), and that he neither made nor was aware of any complaints being made to the Marriott about the floor (Id. at 8, lines 2-10).

On September 30, 2005, defense counsel provided plaintiff's counsel with a transcript of Mrs. Winston's deposition testimony. See Letter from Transcript Clerk (Sept. 30, 2005), submitted as Ex. 10 to Def.'s Mot. for Summ. J. On October 24, 2005, Mrs. Winston completed an errata sheet to correct the transcript of her deposition testimony. See Errata Sheets, submitted as Ex. 11 to Def.'s Mot. for Summ. J. (hereinafter "Errata Sheets"), 1-2. Among other changes, Mrs. Winston noted that line 25 on page 28 – originally transcribed as "No. The floor was slippery." – should read "Yes the floor was slippery." Id. at 2.

On November 1, 2005, defendants filed a pre-motion letter with the court, seeking permission to file a motion for summary judgment. In this letter, defense counsel noted that

> plaintiff has conceded in her deposition testimony that she could not describe [ ] what it was which caused her to fall on the subject dance floor, was unaware of any complaints having been made concerning any such condition prior to her accident, and was unaware of any prior accidents at the same situs. Plaintiff's husband confirms the same, and there has been no evidence adduced to the contrary during the course of discovery.

Scher Letter (11/1/05), 1. On November 9, 2005, Magistrate Judge Gold extended discovery in this matter at plaintiffs' request. Also on November 9th, plaintiffs requested and were granted a one-month extension of time to respond to defendants' pre-motion letter.

On approximately November 15, 2005, three weeks after Mrs. Winston completed the errata sheets correcting her deposition testimony, Mrs. Winston apparently contacted her attorney because she was "[c]oncerned that she misunderstood the questions regarding those answers to which corrections were made." Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Opp. Mem."), 9. At that time, Mrs. Winston completed a new errata sheet correcting the transcript of her deposition testimony. See Errata Sheets, 3-5. The errata sheets completed on November 15th included a notation, next to each change, that the reason for the change was to "clarify." Id. The changes made on the November errata sheets were identical to those listed on the October errata sheets, with the exception of the change to page 28, line 25. On the November errata sheets, Mrs. Winston modified her answer to the question "You slipped?" to read "No. Right before I fell my toe got caught in something and I trip [sic] forward and broke my fall with my hand." Id. at 4. Additionally, on November 25, 2005, Mrs. Winston swore out an affidavit regarding her injury, in which she stated that "Immediately before I fell, I felt the toe of my foot catch on a hard object raised above the level of the dance floor, similar to a hinge in the metal doors set into sidewalks on the street. I fell due to my toe catching on this object." Affidavit of Linda Winston, submitted as Ex. 13 to Def.'s Mot. for Summ. J., ¶¶3-4.

On November 29, 2005, following the close of discovery, defendants renewed their request for permission to move for summary judgment. Defendants asserted that summary judgment was appropriate in this case because, since plaintiff Mrs. Winston "is utterly unaware of what, if anything, caused her to fall," plaintiffs would be unable to establish a prima facie case of negligence. Scher Letter (11/29/05), 5.

On December 7, 2005, plaintiffs' counsel provided defendants' counsel with (1) the November 15th errata sheets completed by Mrs. Winston and (2) Mrs. Winston's November 25,

2005 affidavit. See Pl.'s Opp. Mem., 13. On December 22, 2005, plaintiffs' counsel filed a responsive pre-motion letter with the court. In this letter, plaintiffs asserted that

> Defendant's counsel either misunderstands or misinterprets plaintiff's theory under which it is liable for her injuries. . . the fall which precipitated her injuries was not due to her slipping on a substance only temporarily present on the dance floor of the defendant's premises. Rather, she tripped on a metal object integral to the floor's assembly and/or installation which was protruding from the floor.

Darby Letter (12/22/05), 1. Defendants responded, on December 23, 2005, by stating that "at no time during the course of discovery which has stretched across nearly two (2) full years, has it ever been averred that plaintiff tripped over an unknown 'hard object' on the dance floor," and concluding that plaintiffs were apparently attempting, "in a bald-faced attempt to defeat Summary Judgment, to change both [their] theory of liability and the facts surrounding [Mrs. Winston's] accident." Scher Letter (12/23/05), 2-3. Plaintiffs' counsel countered that "Mrs. Winston's corrections to her deposition testimony merely clarified certain points." Darby Letter (12/28/05), 1.

## DISCUSSION

### I. **Standard of Review for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" to the outcome of the litigation if they must be determined in order to apply the relevant substantive law. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. The moving party has the initial burden of "informing the

district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Although the court must resolve all ambiguities and draw all reasonable inferences against the moving party when considering a motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Summary judgment should only be granted when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

## II. Evidentiary Rulings

The parties disagree as to whether the November changes to Mrs. Winston's deposition testimony and Mrs. Winston's November affidavit should be accepted or precluded.

### A. November Errata Sheets

Rule 30(e) of the Federal Rules of Civil Procedure outlines the procedures governing a witness' review of and changes to his or her deposition testimony:

7

> If requested by the deponent or a party before completion of the deposition, the deponent shall have <u>30 days after being notified by the officer that the transcript or recording is available</u> in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

F.R.C.P. 30(e) (emphasis added). As described above, Mrs. Winston submitted two sets of errata sheets correcting her August 2005 deposition testimony. Because the first errata sheets, completed on October 24, 2005, do not include alterations which would alter this court's summary judgment ruling, the court finds it unnecessary to consider whether these changes should be accepted or rejected. The validity of the second set of errata sheets, completed on November 15, 2005 and submitted to defense counsel on December 7, 2005, on the other hand, is central to the determination of whether summary judgment is appropriate in this matter. Defendants argue that the November errata sheets should be precluded because (1) Mrs. Winston inappropriately makes substantial alterations to her previous sworn testimony; (2) Mrs. Winston gives only conclusory reasons ("clarify") for the changes; and (3) the errata sheets were completed and submitted to defense counsel more than 30 days after the deposition transcript was made available to Mrs. Winston for review. Scher Letter (12/23/05), 2.

The court notes that the federal courts are split over whether Rule 30(e) allows substantive changes to deposition testimony. See Agrizap v. Woodstream Corp., 232 F.R.D. 491, 493 n.2 (E.D. Pa. 2006) (citing cases). However, the Court of Appeals for the Second Circuit has held that

> Rule 30(e) allows deponents to make "changes in form or substance" to their testimony. . . "the language of the Rule places no limitations on the type of changes that may be made[,] . . . nor does the Rule require a judge to examine the

sufficiency, reasonableness, or legitimacy of the reasons for the changes" – even if those reasons "are unconvincing."

Podell v. Citicorp Diners Club, 112 F.3d 98, 103 (2d Cir. 1997) (quoting Lugtig v. Thomas, 89 F.R.D. 639, 641 (N.D. Ill. 1981)). Therefore, if substantive changes were the only problem with the November errata sheets, the court would have to consider these changes, along with Mrs. Winston's original answers to the deposition questions, in evaluating the motion for summary judgment. See Podell, 112 F.3d at 103 ("when a party amends his testimony under Rule 30(e), the original answer to the deposition questions will remain part of the record").

However, the court finds that the November changes must be excluded because they were untimely. Numerous courts have rejected changes to depositions when the procedural requirements of Rule 30(e) were not met. See, e.g., Agrizap, 232 F.R.D. at 493 ("[T]here is no debate that the procedural requirements of Rule 30(e) must be adhered to."). Among these procedural requirements is the requirement that any changes to the deposition transcript be made within thirty days after the deponent's lawyer is notified that the transcript is available. See Fed. R. Civ. P. 30(e); Hambleton Bros. Lumber Co. v. Balkin Enters., 397 F.3d 1217, 1224 (9th Cir. 2005) (noting that the "thirty-day correction clock begins upon notification of availability, not possession."); Welsh v. R.W. Bradford Transp., 231 F.R.D. 297, 301 (D. Ill. 2005) (finding that the thirty days must be calculated "from the date of notification to a deponent's lawyer -- if there is one -- and the date of submission to the court reporter"); Rios v. Bigler, 67 F.3d 1543, 1552 (10th Cir. 1995); Margo v. Weiss, 213 F.3d 55, 61 (2d Cir. 2000) (excluding changes to deposition transcripts made after thirty-day period and noting that "[t]here is no reason to distinguish. . . between an attempt to conjure up a triable issue of fact through the proffer of a late affidavit and an attempt to achieve the same end through the submission of delayed errata

sheets or supplemental answers to interrogatories. None will defeat a motion for summary judgment."); Sundaram v. Brookhaven Nat'l Labs., No. CV-94-2330, 2006 U.S. Dist. LEXIS 14120, at *99 (E.D.N.Y. Jan 16, 2006) (noting that "[t]here is ample authority for the proposition that untimely deposition changes are to be disregarded, particularly where they have the effect of creating a disputed issue of fact").

In the instant case, it is very clear that the November errata sheets were neither completed, signed, nor made available to defense counsel within the thirty-day period provided by Rule 30(e). As described above, plaintiff's counsel was provided with a transcript of Mrs. Winston's deposition testimony on September 30, 2005. See Letter from Transcript Clerk (Sept. 30, 2005). Under Rule 30(e), Mrs. Winston had until October 31, 2005 (because October 30, 2005 was a Sunday) to correct her deposition. However, the changes in question were made on November 15, 2005 and submitted to the defendants on December 7, 2005. See Errata Sheets, 3-5; Pl.'s Opp. Mem., 13. Therefore, the court finds that these changes must be excluded.[2]

### B. Mrs. Winston's November Affidavit

It is well-established that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dep't of Corrections, 84

---

[2]The court notes that, although the failure to make changes within the thirty-day period is the clearest procedural failing, the November changes to Mrs. Winston's deposition transcript might also be precluded on other grounds. For example, it is not clear whether Mrs. Winston or her attorney actually requested the opportunity to review and change her deposition testimony prior to the completion of the deposition, as required by Rule 30(e). Additionally, Mrs. Winston's "reason" for each of the changes listed on the November errata sheet was the single word "clarify." See Errata Sheets, 3-5. While "clarify" might explain the correction of an incoherent answer, it seems insufficient to explain plaintiff's alteration of her answer to the question "You slipped?" from "The floor was slippery." (Linda Wilson Depo., 28, line 25) to "Right before I fell my toe got caught in something and I trip [sic] forward and broke my fall with my hand." (Errata Sheets, 4). However, because this issue can be resolved based upon the failure to make changes within the thirty-day period, it is unnecessary for the court to inquire further into these other procedural requirements.

10

F.3d 614, 619 (2d Cir. 1996); see also Rubens v. Mason, 387 F.3d 183, 192 (2d Cir. 2004) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [the plaintiff's] own prior deposition testimony.")).

Mrs. Winston's November 25, 2005 affidavit alleges facts – specifically, that Mrs. Winston's fall was due to her toe catching in a mental object protruding from the dance floor – that were first mentioned in the November errata sheets correcting her deposition testimony. The court notes that both the November errata sheets and the November affidavit were created after defendants notified the court, on November 1, 2005, that they intended to move for summary judgment. Because the November errata sheets have been excluded as untimely, the allegations in Mrs. Winston's November affidavit contradict plaintiff's prior deposition testimony, and – like the deposition changes in the November errata sheets – appear to have been raised solely to create issues of fact and thereby defeat summary judgment. Therefore, the court will not consider Mrs. Winston's November affidavit when deciding defendants' motion for summary judgment.

### III. Defendants' Motion for Summary Judgment

In evaluating defendants' motion for summary judgment, the court must consider whether the evidence on record, construed in the light most favorable to the plaintiff, establishes that Mrs. Winston's fall and consequent injuries were caused by defendants' negligence. Given the above evidentiary rulings, the court finds that plaintiffs allege that Mrs. Winston's accident occurred because "[she] went flying" and "[t]he floor was slippery" (Linda Winston Depo., 28, lines 19-

25), and "she slipped and fell" because the floor was "slippery" (Charlie Winston Depo., 5, lines 11-17).

As the alleged negligent acts and the accident occurred in New York, New York substantive law governs this diversity action. Defendants assert that summary judgment is appropriate because, under New York law, the fact that a floor may be slippery by reason of its smoothness, shininess, or polish – in the absence of a negligent application of wax or polish – does not give rise to a slip-and-fall cause of action or an inference of negligence. Def.'s Mem. of Law, 1 (citing cases).

To establish a prima facie case of negligence in a "slip and fall" action, the plaintiff must show that the defendants "created the condition which caused the accident, or that the defendants had actual or constructive notice of the condition." Quarles v. Columbia Sussex Corp., 997 F. Supp. 327, 330 (E.D.N.Y. 1998) (quoting Bykofsky v. Waldbaum's Supermarkets, Inc., 619 N.Y.S.2d 760, 761 (2d Dep't 1994)). See also Raanan v. Fifth Ave. of Long Island Realty Assocs., 793 N.Y.S.2d 143 (2d Dep't 2005); Friedenreich v. Roosevelt Field Mall Mgmt., 795 N.Y.S.2d 454 (2d Dep't 2005). Even viewed in the light most favorable to the plaintiffs, nothing in the instant record suggests that defendants caused the floor to be inappropriately slippery, or that defendants had actual or constructive notice of the fact that the floor was inappropriately slippery.

Plaintiffs allege only that the dance floor at the Brooklyn Marriott Hotel was "Shiny. Shiny. Shiny." (Linda Winston Depo., 28, line 18) and "slippery" (Id. at 28, lines 23, 25; Charlie Winston Depo., 5 line 17). Plaintiffs present no evidence that the floor was slippery because it was wet, or because it was covered in any liquid, debris, or other substance. Plaintiffs similarly present no evidence that the floor had been recently waxed or polished; in fact, defendants have

demonstrated, through the deposition testimony of several Marriott employees, that the dance floor in question was swept with a broom and wiped with a dry cloth, but <u>never</u> waxed, polished, oiled, or mopped. <u>See</u> Deposition of Louis Pinata, Director of Event Operations at the Brooklyn Marriott Hotel (October 13, 2005), <u>submitted as</u> Ex. 7 to Def.'s Mot. for Summ. J., 29-35; Deposition of Robert Fortunado, Senior Banquet Manager at the Brooklyn Marriott Hotel (October 31, 2005), <u>submitted as</u> Ex. 8 to Def.'s Mot. for Summ. J., 16-17, 19, 30. The court finds that plaintiffs have provided no evidence whatsoever regarding any specific condition that might have caused the dance floor to be slippery. Therefore, plaintiffs cannot possibly show that defendants either caused the slippery condition or had actual or constructive knowledge of the slippery condition.

Under well-established New York law, the fact that a surface is slippery by reason of its smoothness or polish alone does not support a claim for negligence. <u>See, e.g.</u>, <u>Kline v. Abraham</u>, 178 N.Y. 377, 381 (1904); <u>Murphy v. Conner</u>, 84 N.Y.2d 969, 971 (1994). In fact, New York courts have consistently found that, "in the absence of evidence of a negligent application of floor wax or polish, the mere fact that a smooth floor may be shiny or slippery does not support a cause of action to recover damages for negligence, nor does it give rise to an inference of negligence." <u>Khaimova v. Osnat Corp.</u>, 799 N.Y.S.2d 779, 779 (2d Dep't 2005) (citing cases). <u>See, e.g.</u>, <u>Ventriglio v. Staten Island Univ. Hosp.</u>, 774 N.Y.S.2d 571, 572 (2d Dep't 2004); <u>Cribbs v. ISS Int'l Serv. Sys.</u>, 751 N.Y.S.2d 534, 535-536 (2d Dep't 2002); <u>Guarino v. La Shellda Maint. Corp.</u>, 675 N.Y.S.2d 374, 375 (2d Dep't 1998).

Summary judgment for the defendant is appropriate where, as here, a plaintiff alleges that he or she was injured due to the slippery nature of a floor but fails to identify any defect or condition which defendant could have created or known about. <u>See, e.g.</u>, <u>Lincoln v. Laro Serv.</u>

13

Sys., 767 N.Y.S.2d 279, 280 (2d Dep't 2003) (noting that "A defendant is entitled to judgment as a matter of law where the plaintiff is unable to identify any defect in the floor upon which he or she fell other than to describe it as smooth or shiny."); Becker v. Cortlandt Colonial Rest., Inc., 709 N.Y.S.2d 620, 621 (2d Dep't 2000). In the absence of evidence from which a jury could conclude, without speculating, that defendants' negligence caused Mrs. Winston's injuries, the court must dismiss plaintiffs' case.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted, and this case is dismissed in its entirety. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

							_____
							Allyne R. Ross
							United States District Judge

Dated:	May 4, 2006
		Brooklyn, New York

**SERVICE LIST**:

*Plaintiff's Attorney*
Regina L. Darby
79 Franklin Street
New York, NY 10013

*Defendants' Attorney*
William Goldman Scher
Garbarini and Scher, P.C.
432 Park Avenue South
New York, NY 10016-8013

cc: Magistrate Judge James Orenstein